IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:08cr241-MHT |
| | ) | (WO) |
| SAVILL L. RUSH | ) | |

OPINION

This cause came before the court on the government's motion to revoke the bond of defendant Savill L. Rush based on new information. During a hearing on May 18, 2018, after hearing evidence, the court construed the government's motion as a motion to reopen Rush's detention hearing pursuant to 18 U.S.C. § 3142(f), granted that motion, and ordered that he be detained pending his revocation hearing. The court now issues this opinion to further explain its reasoning.

I. BACKGROUND

On January 6, 2018, officers from the Montgomery Police Department responded to a 911 call to find J. R. badly beaten. The officers took defendant Rush into

custody. Rush was charged with Domestic Violence 3rd, a charge that was later upgraded to Domestic Violence 2nd because of the seriousness of J. R.'s injuries. Rush was held at the Montgomery County Detention Facility in state custody. On January 9, the United States Probation Office filed a petition to revoke Rush's supervised release, and this court issued a warrant for his arrest.

Rush was arrested on April 9. That day, the court convened an initial appearance, and the United States Magistrate Judge--based on Rush's election not to contest the allegations--found probable cause to believe that Rush violated the conditions of his supervised release. The magistrate judge then released Rush from custody under the terms of his supervised release pending a revocation hearing in this court, and ordered that Rush have no contact with the alleged victim in the meantime. That revocation hearing was scheduled for May 16.

In court that day, Rush informed the court that he was dissatisfied with his appointed counsel's performance and he asked for the assistance of a different attorney. His counsel agreed that a new attorney would be required because of the strained relationship between him and Rush, and the court granted counsel's request to withdraw as counsel pending the end of the day's hearing.[1] The court then continued the revocation hearing to a later date so that the court could appoint new counsel and to allow time for such new counsel to meet with Rush and prepare for the revocation hearing. Since that time, new counsel has been appointed, and Rush's revocation hearing is now set for May 24.

Before concluding the May 16 hearing, the government informed the court that it had acquired additional evidence about Rush's acts on the night of

---

1. Despite the reported strained relationship between Rush and his counsel, the attorney performed capably and appeared to represent Rush to the best of his ability throughout the May 16 hearing.

January 6, and, in light of that evidence, the government made an oral motion to revoke Rush's bond. During the hearing, the government presented harrowing evidence in the form of recordings of two 911 calls made by J. R.; recordings of seven calls between Rush and J. R. while he was in jail; testimony from a police officer who responded to J. R.'s 911 calls on January 6; and a picture of J. R. taken that night. The court also heard testimony from J.R.

As stated, the court construed the government's motion as a motion to reopen Rush's detention hearing pursuant to 18 U.S.C. § 3142(f), and, after hearing the evidence, granted that motion and ordered that Rush be detained pending his revocation hearing.

## II. DISCUSSION

Pursuant to 18 U.S.C. § 3142(e)(1), the court must order the detention of a defendant if, after a hearing, the court finds that "no condition or combination of conditions will reasonably assure... the safety of any

4

other person and the community." [2]  Such a finding must be supported by clear and convincing evidence. § 3142(f).

A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  § 3142(f).  In support of its motion to reopen the detention hearing, the government

---

2. A detention hearing is required under certain circumstances.  *See* 18 U.S.C. § 3142(f)(1) & (2).  A detention hearing was required here under the provision requiring a hearing upon a motion of the government or on the court's own initiative in a case where there is "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." § 3142(f)(2)(B).

claimed--and Rush did not challenge--that it did not have access to the recorded phone calls at the time of the initial detention hearing. The court credited the government's claim. Because the new evidence had a "material bearing" on whether conditions of release could assure J. R.'s safety, the court found that reopening the detention hearing was permissible.

In determining whether conditions of release will suffice to assure the safety of any other person and the community, courts are required to consider the following factors set forth in § 3142(g): the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community. Based on the clear and convincing evidence presented, the court found that no condition or combination of conditions could reasonably ensure J. R.'s safety absent Rush's detention. Each of

the factors outlined in § 3142(g) weighed in favor of his detention.³

First, the nature and circumstance of the offense weighed in favor of Rush's detention. Rush is charged with committing domestic violence so severe that J.R.'s nose was broken and required surgery. The evidence showed that she suffered serious physical injuries. In the 911 calls, J. R. sobbed uncontrollably to the 911 operator while a man (whom she identified to the operator as Savill Rush) screamed and threatened her. J. R. made clear that she feared for her life and begged the operator for the police to arrive more quickly. One of the calls lasted seven minutes, but seemed much longer. Rush not only severely beat J.R.,

---

3. The legal findings discussed in this opinion go solely to the issue of detention. At the revocation hearing, the court will undertake a new and independent review of the evidence presented at the hearing in deciding whether to revoke supervised release. In other words, the court's findings here do not determine the court's ultimate decision on the issue of revocation.

he terrorized her. This weighed in favor of his detention.

Second, the weight of the evidence was heavily against Rush. The court heard no evidence suggesting that Rush did not attack and beat J.R.; on the contrary, all of the evidence showed that he did exactly that. Aside from the 911 recordings, Rush made several admissions during his jail telephone calls with J.R. For example, he said to J. R. that he would "break that [nose] again." When J.R. complained that she had to have surgery on her broken nose as a result of their altercation, Rush replied that the surgery would not be nearly as bad as the time he would have to spend in prison, and that the whole ordeal was her fault because she "pressed the issue"--apparently by calling and speaking with the police after he beat her.

The weight of the evidence also established that Rush is likely to violate the court's no-contact order if released. At the hearing, Rush argued that he should be released on conditions because he has

complied with this court's no-contact order for the last four months. However, the court has serious doubts about his compliance. During the jail calls, Rush apparently believed that he was under a restraining order[4] that prevented him from contacting J.R., but continued to speak with her and indicated that he would evade such an order, including via three-way phone calls. (Indeed, during their calls Rush actually has J.R. make a three-way call to his mother so that he can talk to her, but first has J.R. suppress her own phone number--presumably so that his mother would not recognize the call as coming from J.R.'s phone.) Furthermore, Rush repeatedly demanded that J. R. tell his probation officer that he did not beat her and told her to blame her injuries on another man. Thus, he has shown a willingness to violate court orders and obstruct justice. Given these acts, the court found that Rush is unlikely to abide by any

---

4. The source of the restraining order was not clear to the court.

conditions the court could set to protect J.R. and the community, were he released.

Third, Rush's history and characteristics weighed in favor of his detention. Based on the evidence, it appears clear that Rush has a serious anger problem. He also appears to lack remorse for his actions. During the calls between J.R. and Rush in the week following his arrest, Rush threatened J. R. and blamed her for his arrest. And, although he claimed to be concerned about his children's welfare, he showed no recognition of the psychological damage he could inflict on them by exposing them to domestic violence early in life. Furthermore, as discussed above, he appears to have little regard for no-contact orders.

Finally, it is clear to the court that Rush's release would pose a serious danger to J. R. Rush has repeatedly threatened J.R., and the jail phone calls made clear that his anger did not immediately abate after the altercation. The evidence also made clear that he does not understand the gravity or wrongness of

domestic violence. This lack of recognition increases the risk he will do it again, because he does not view it as a problematic behavior, but instead as something J. R brought on herself. Furthermore, the court heard evidence that Rush's mother has lodged a complaint against J. R. with the State's child protective services agency and is attempting to gain custody of J. R. and Rush's children, and that Rush wants his mother to have custody. As a result, the dangerously high level of conflict in their relationship is unlikely to abate. The court is also convinced that J. R. is unlikely to take the steps needed to protect herself from Rush. At the hearing, the court learned that J. R. declined to testify at the grand jury in state court against Rush. The ongoing threat of losing custody of her children may make her more willing to placate Rush and expose herself to him as a means to keep her children.

Accordingly, the court ordered Rush's detention

pending his revocation hearing.

DONE, this the 21st day of May, 2018.

                                         /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**